**Mark CHARRON, Plaintiff,**

v.

**Huey P. MEAUX, d/b/a Crazy Cajun Music, et al., Defendants.**

**No. 71 Civ. 4876.**

United States District Court,
S. D. New York.

Feb. 21, 1975.

---

See also, 60 F.R.D. 619.

Karpatkin, Ohrenstein & Karpatkin, New York City, for plaintiff, John E. LeMoult, New York City, of counsel.

Martin Itzler, New York City, for defendants.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff Mark Charron, a songwriter, has alleged, among other things, that he is owed royalties by defendants Renleigh Music, Inc. and Flomar Music Publishing Inc., publishers of his music. There are before me two motions, one addressed to each of the said defendants, seeking to strike that defendant's answer and for an inquest on damages for willful failure to respond to a critical interrogatory in which each defendant authorized inspection of its royalty records. Plaintiff also seeks reasonable expenses, including attorney's fees on each motion. Since I find a clear joint pattern of conduct by both defendants [1] designed to, and which in fact has resulted in a long-continuing, and so-far successful frustration of the plaintiff's endeavor to obtain by discovery the amount of royalties due and owing, the motions are granted to the extent hereafter set forth.

The action was commenced by the plaintiff in 1971. In February 1973, plaintiff served interrogatories on both Flomar and Renleigh. Certain interrogatories asked each defendant, among other things, for a statement of royal-

---

1. Both defendants have at all times had the same attorneys, the firm of Feinman & Krasilowsky until mid-June 1974, and Martin Itzler, Esq. thereafter.

ties that had been received on plaintiff's behalf. The interrogatories were held in abeyance until October, 1973 by reason of the pendency of a motion for summary judgment which was denied. Thereafter, however, neither defendant provided answers and plaintiff made its first motion to compel answers.

In January, 1974, the parties appeared before Magistrate Hartenstine. The issues on the motion were resolved upon the Magistrate's recommendation, to which defendants agreed, that each defendant would make its books and records on the subject of royalties available to plaintiff for examination. In the answers to interrogatories which defendants subsequently filed, this provision was expressly made by each of them. Flomar's answer # 4 provided that an appointment should be made with "Jack Hauptman" the comptroller of co-defendant Scepter Records, Inc. Flomar being a former affiliate of Scepter, and Scepter being now in possession of Flomar's records subsequent to Flomar's dissolution in 1969. Renleigh's answer # 4 to plaintiff's interrogatories similarly provided that an appointment to examine Renleigh's books should be made with one "Alan Honig," 3 East 57th Street, who is the Treasurer of Renleigh.

Thereafter, plaintiff engaged an accountant, Allen Dolinsky, to do the said examination. On May 6, 1974, plaintiff's attorney John LeMoult spoke with Flomar's then lawyer, Andrew Feinman, senior partner of Feinman & Krasilowsky and told him that on May 8, plaintiff's accountant would appear at Flomar and Renleigh's offices to examine the books. Feinman said it was appropriate and he would make all the neces-

sary arrangements.[2] However, on May 8, when Dolinsky went to the Flomar offices at 250 West 54th Street, and asked to see the Jack Hauptman referred to in Flomar's answer to interrogatories, *supra*, Dolinsky was told that 1) Hauptman was not there; 2) the records were not kept at that office and 3) he was to go to 254 West 54th Street where the records were kept. When he got there he was met by one Mel Field who told him that he could not look at the records of Flomar, that the records had not been put together in one place, and that Flomar had received no notice of Dolinsky's visit. Thereupon plaintiff's attorney LeMoult spoke with Field, apparently by phone. Field told LeMoult that there would be no cooperation whatsoever with regard to the production of the documents called for in the interrogatories.[3] Dolinsky thereupon abandoned his effort to examine Flomar's books.

Subsequently LeMoult spoke with Comptroller Hauptman, who, too, refused to produce anything. Hauptman said it would be necessary for the plaintiff to provide a specific list of each and every document sought to be examined. LeMoult told him that the documents had been set out in the interrogatories and in the answers thereto and that if Hauptman had any difficulty he could obtain assistance from his counsel. Hauptman declined to do this.[4]

Having received the foregoing treatment, plaintiff understandably made a second motion in June, 1974, now to strike Flomar's answer, etc.[5] Before the return day in late June, LeMoult was called by one Martin Itzler, Esq., who informed him that he was being substituted as attorney for both Flomar and Renleigh and asked for an adjournment

2. There is no affidavit of attorney Feinman denying this fact.

3. There is no affidavit of Field denying any of the foregoing.

4. Hauptman submitted an affidavit but failed to deny the foregoing statements attributed to him. His version was that Dolinsky had

been "unable to inspect Flomar's books as they could not be located immediately" and that "I have never told [LeMoult] that I would not cooperate nor have I ever been uncooperative."

5. This is the first motion before me.

of the motion. LeMoult agreed to do this on condition that Itzler would allow plaintiff's accountant to examine all the books and records which both defendants had previously agreed to make available. Itzler so promised. By the time this agreement had been reached, apparently in July, Dolinsky had left for a vacation in Europe and arrangements were made with Itzler to adjourn the motion until the fall.

On September 19, 1974, a new appointment was set up for Dolinsky to meet with Hauptmen. However, upon Dolinsky going to Flomar, Hauptman, while exhibiting certain books, had no books whatsoever showing the sources of income or to whom applicable. As a consequence, on the single issue as to which Dolinsky was there, plaintiff's royalties, the production of books was completely worthless. Hauptman then told Dolinsky he would look for the other books and give him a call.[6]

The next day, September 20, 1974, Dolinsky had an appointment to meet with Renleigh's Treasurer Alan Honig, designated in Renleigh's answer #4, *supra*, to look at the Renleigh books. It is not disputed that Dolinsky arrived at Renleigh and was told by a secretary that 1) he was "expected,"[7] and 2) Honig was not there and that he could not be shown the books in Honig's absence, and 3) she did not know when Honig would return.[8] After waiting an hour and a half, Dolinsky left.

Following the frustration of Dolinsky's second effort to examine the Flomar and Renleigh books on September 19 and 20, plaintiff made a third motion on November 15, 1974[9] asking for identical relief against Renleigh, to wit, to strike the answer, etc. During the seven weeks prior to the making of the motion, Hauptman never gave Dolinsky the call he promised on September 19 as to the "missing" relevant books, nor has he yet.

Nor have the defendants done anything else since September 20. They claim that it is the plaintiff that is frustrating the discovery by refusing to complete the examination of their books.[10] Plaintiff, having made three successive motions for relief, and after three unsuccessful efforts of an accountant to examine, has understandably declined defendants' "proposal" to examine further.

▪ The foregoing is a willful, deliberate and thus-far completely successful effort to frustrate the plaintiff in his legitimate discovery. The crucial facts as to the May 8 endeavor to examine Flomar's books are not disputed. Feinman, attorney for both defendants, agreed to set up the examination. It was in fact *not* set up, and Flomar's representative, Field does not dispute he told Dolinsky that there would be no cooperation. Hauptman similarly premised cooperation upon an unacceptable and

6. Hauptman has never submitted any affidavit contradicting Dolinsky's account of this second endeavor.

7. Honig, in his affidavit, claims that Mr. Dolinsky was to have come on September 19, the day *before*. However, Itzler, who set up the schedule for Flomar on the 19th and *Renleigh on the 20th*, is significantly silent on this subject in his affidavit and Honig does not deny that Dolinsky was told he was "expected." Nor is there an affidavit of the secretary with whom Dolinsky dealt denying this critical statement.

8. If Honig, as he now claims, was at one of the Renleigh New Jersey offices where he "customarily" was all day every Friday, it is highly significant that 1) no one at Renleigh

made an effort to call him at his "customary" place and tell him of Dolinsky's presence, and 2) Dolinsky was told Honig was expected to return, only the time of his return being unknown.

9. This is the second motion before me.

10. Defendants' cavalier attitude is best revealed in a statement of its counsel:
   [I]t has been plaintiff that has failed to cooperate in the prosecution of this action. The instant motion, together with the companion motion made by plaintiff against defendant Flomar also presently before the Court, constitutes yet another frivolous act by plaintiff serving to waste the time of the Court and counsel.

unjustified condition. The motion made by plaintiff in June 1974 was therefore completely justified.

LeMoult's third try upon the substitution of Itzler, while the courteous act of a colleague, was unrewarded. Hauptman did not deliver the relevant books on September 19, and his "promise" to do so subsequently was not kept. Honig's "absence" on September 20, while a secretary was telling Dolinsky he was "expected," was yet a further step to avoid disclosure of the royalties due plaintiff. Thus, the plaintiff's motion in November 1974 was also justified.

In sum, plaintiff has made three motions, the Magistrate with defendants' consent has directed an inspection of the books, LeMoult has arranged three times for the examination, and Dolinsky has three times attended, only to achieve utterly nothing.

The operative facts being undisputed, there is no need for an evidentiary hearing. On the basis of the foregoing, I find that the conduct of defendants Flomar and Renleigh, individually and jointly, denying plaintiff royalty records has been willful and deliberate and not due to an inability to comply. Cf. *Flaks v. Kogel*, 504 F.2d 702 (2d Cir.1974). It is clear that defendants Flomar and Renleigh[11] are trying to wear plaintiff out by their tactics. Plaintiff, an individual, has clearly been put to substantial expense in terms of attorney's fees and accountant's fees only to find himself in a "revolving door." This practice by these defendants to cause the plaintiff to despair and perhaps abandon or compromise his suit, however, cannot be tolerated. Particularly intolerable is the fact that after a year and a half it has been recently intimated to plaintiff's counsel by defendants' attorney Itzler

that some of the relevant records may no longer be available for inspection.[12]

I am not unaware of defendants' offer in Itzler's most recent affidavit on December 2, 1974 "to afford plaintiff its right to inspect its books and records . . . ." But this is no more than defendants offered in February 1974, in their answers to interrogatories issued in response to the Magistrate's direction after plaintiff's first motion,[13] and is no more than attorney Itzler offered in June 1974 after plaintiff's second motion.[14] Thus, I deem defendants' offer of December, 1974 made after plaintiff's third motion, even assuming its bona fides, is too late to mitigate the sanctions this conduct warrants.

The foregoing conduct might well justify unconditionally striking the defendants' answers. The right to litigate an action on the merits can be forfeited by conduct, particularly where, as here, parties choose to defend by repeatedly refusing to produce during pre-trial discovery factual information essential to the adversary's prima facie case. However, since caution should be exercised before applying the ultimate sanction, *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) and *Flaks v. Kogel, supra*, I do not apply this remedy at this time.

The motion to strike the answer of each defendant is granted pursuant to Rule 37, Fed.R.Civ.P., unless within 20 days from the date of service of a copy of this order upon a defendant, said defendant shall, at a time convenient to plaintiff's accountant, at the chambers of Magistrate Hartenstine in the United States Courthouse, produce for inspection by plaintiff all relevant books and records bearing on plaintiff's royalties.[15] Further, and in any event, defendant

---

11. There is no question that Messrs. Hauptman and Honig, principal actors here, are responsible officers connected with each defendant.

12. Itzler has not refuted this sworn statement by LeMoult nor asked leave of the Court to do so.

13. That was dishonored on May 8.

14. That was dishonored on September 19 and 20.

15. In the event any relevant and necessary books or records have become unavailable since the commencement of this action, these motions may be renewed.

Flomar shall pay to plaintiff the sum of $1,082.50, which I fix as motion costs and reasonable expenses including attorney's and accountant's fees needlessly imposed upon plaintiff by the conduct of defendant Flomar as described herein, and defendant Renleigh shall pay to the plaintiff the sum of $1,000.00, which I fix as motion costs and reasonable expenses, including attorney's and accountant's fees needlessly imposed upon plaintiff by the conduct of defendant Renleigh as described herein. In the event the ordered sum is not paid by any defendant within 20 days of service upon that defendant of a copy of this order, the order striking the answer of that defendant shall stand irrespective of any production of books and records by said defendant.

The foregoing is so ordered.